IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GREGORY MOBLEY,                    :
                                   :
        Plaintiff,                 :
                                   :
v.                                 :        CIVIL ACTION 08-0550-M
                                   :
MICHAEL J. ASTRUE,                 :
Commissioner of                    :
Social Security,                   :
                                   :
        Defendant.                 :


MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 14). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18). Oral argument was heard on April 27, 2009.[1] Upon consideration of the administrative record, the memoranda of the parties, and oral

---

[1] The Court notes that Plaintiff's Attorney failed to appear for Oral Argument. The Defendant's Attorney did appear and make his arguments to the Court, however.
   The Court also notes that Plaintiff failed to file a Fact Sheet though Ordered on two separate occasions to do so (*see* Doc. 6, ¶ 3 and page 5; Doc. 20). Nevertheless, in spite of these failings, the Court's decision was in no way affected by these lapses.

argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-four years old (Tr. 35), had completed an eleventh-grade education (Tr. 38), and had previous work experience as a lace machine operator, a logger, a lumber handler, a scaffold builder, and a nursery laborer (Tr. 35).  In claiming benefits, Plaintiff alleges disability due to a mental impairment, lumbar degenerative disc disease, cervical spine pain, and TMJ (Doc. 14, p. 12).

The Plaintiff filed applications for disability benefits and SSI on April 10, 2006 (Tr. 90-92, 95-97).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Mobley can perform the full range of medium

exertion work enabling him to do his past work as a lace machine operator (Tr. 7-15).  Plaintiff requested review of the hearing decision (Tr. 4-5) by the Appeals Council, but it was denied (Tr. 1-3).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Mobley alleges that:  (1) The ALJ improperly found that he did not have a severe mental impairment; and (2) the ALJ did not accord proper weight to the opinions and conclusions of his treating physician (Doc. 14).  Defendant has responded to—and denies—these claims (Doc. 15).  The relevant[2] medical evidence of record follows.

A consultative examination was completed on July 30, 2006 by W. G. Brantley, Ph.D., who repeatedly characterized Plaintiff as a malingerer (Tr. 209-11).  Brantley noted many things which Mobley seemed to know little-to-nothing about:  the dates of birth or ages of his two children; the reasons for his prior arrests; the name of the doctor prescribing the sling he was wearing; the day, month, or year of the examination; his address or the town in which he lived; the Mayor, Governor, or President, or the capital of Alabama or the United States.  The Counselor noted that Plaintiff's physical appearance was normal and that his maturity level was fairly normal.  Brantley could not "rule

---

[2]Since the two claims raised herein concern Plaintiff's mental impairment, the Court will concentrate on that evidence.

out Borderline Intellect, but he appears to function in the Normal Range in regard to maturation.  There certainly were no features of anxiety or depression noted today, and mood was stable" (Tr. 210).  The Examiner opined that "immediate, recent, and remote memory, along with understanding and concentration, are functional within the Low Average Range" and indicated that Mobley had "independent adaptive, leisure, social, self-care, hygiene, and dressing skills" (Tr. 10).  It was thought that Plaintiff could not budget money.  Brantley's stated that, "[u]sing DSM-IV criteria, [] Mobley clearly meets criteria for Malingering;" he further stated that there was "no evidence that he is not capable of working" (Tr. 211).

Mobley was initially seen at Southwest Alabama Mental Health (hereinafter *SAMH*) on July 17, 2006 for complaints of depression; Plaintiff indicated that he had thoughts, and a plan, for hurting himself (Tr. 256; *see generally* Tr. 256-63).  Mobley's initial dianosis was major depression, recurrent and severe without psychotic factors, and alcohol dependence by history (Tr. 262). On July 28, Plaintiff was deemed to be depressed and was prescribed Lexapro[3] by Dr. Christopher Jenkins (Tr. 254-55).  A treatment plan was formulated on August 7, 2006 (Tr. 251-53).

On November 17, 2006, Dr. Jenkins completed a mental

---

[3]*Lexapro* is "indicated for the treatment of major depressive disorder."  *Physician's Desk Reference* 1176 (62nd ed. 2008).

residual functional capacity (hereinafter *RFC*) assessment in
which he indicated that Mobley had marked difficulty in
maintaining social functioning and extreme restrictions in
activities of daily living, extreme deficiencies of
concentration, persistence, or pace resulting in frequent failure
to complete tasks in a timely manner, and extreme impairment of
ability to respond to customary work pressures (Tr. 235).  It was
Dr. Jenkins' opinion that Plaintiff would be markedly limited in
his ability to respond appropriately to supervision and co-
workers in a work setting and extremely limited in his ability to
understand, carry out, and remember instructions and perform
simple or repetitive tasks (*id.*).  The doctor said that these
limitations had existed for a period of four months, but could
last for over a year; he also stated that no psychological
evaluation had been completed in making these determinations.

On January 26, 2007,[4] Plaintiff reported that he had taken a
small overdose of Flexeril[5] in the previous several days in a
suicide attempt (Tr. 249).  On April 18, it was noted that Mobley
was alert and his affect appropriate; although he was confused
and worried about some legal issues, he was coping well (Tr.
282).  SAMH reported a call from Plaintiff's mom a week later

---

[4]If there are any treatment records appearing between August 7,
2006 and January 26, 2007, they do not appear in this record.

[5]Flexeril is used along with "rest and physical therapy for
relief of muscle spasm associated with acute, painful musculoskeletal
conditions." *Physician's Desk Reference* 1455-57 (48th ed. 1994).

which indicated that she was putting him out of her home because she could not stand it any more; he stated that he was very depressed about his financial problems (Tr. 283). Mobley was still depressed several days later but denied any suicidal thoughts (Tr. 284). On June 28, Plaintiff reported that an epidural the previous day had helped his pain though he continued to be depressed (Tr. 287). The next day, Mobley reported that pain and numbness in his arms had kept him from sleeping the previous night (Tr. 288). During a visit on July 23, 2007, Plaintiff was told of some cognitive relaxation techniques for pain management; Mobley still vocalized concerns over his financial problems and inability to provide for his children (Tr. 290). On August 3, the doctor noted that Plaintiff was anxious and depressed though his thought process was normal and his insight and judgment were adequate (Tr. 292). Twelve days later, Mobley reported poor sleep and frustration over his financial problems though he was "able to laugh and joke about some issues" (Tr. 295). On August 22, Plaintiff reported that his mother was throwing him out of the house after an argument (Tr. 299); on the next day, he was described as anxious and depressed (Tr. 298). Mobley began completing apartment and group home applications, with assistance, on the next day (Tr. 300); he was told on August 28 that an apartment was available (Tr. 301). On September 13, 2007, Plaintiff's doctor noted that he was alert, oriented,

anxious, and depressed with normal thought processes (Tr. 302).
On September 18, Mobley's treatment plan was reviewed wherein it
was noted that he was stable and maintaining; progress was
considered to be fair (Tr. 339-42).  In a phone conversation on
October 22, SAMH reported that Plaintiff had stated that "some
days 'he's on top of the world and others he's doing rock
bottom'" (Tr. 346).  On November 20, Mobley reported that he was
doing well, that he was not suffering symptoms of mental illness,
and his sleep was good (Tr. 354).  On December 3, SAMH reported
that Plaintiff was alert and euthymic with appropriate affect and
normal thought process; he indicated that he was frustrated with
his financial and medical problems, however, which made him feel
hopeless and affected his sleep (Tr. 357).  Two days later, a
report was entered that Mobley's sleep and appetite were good and
he was compliant with his medications (Tr. 361).  On December 18,
Plaintiff reported "continued situational depression but [was]
coping well at present;" he also reported "fleeting hopeless
feelings" and poor sleep at times (Tr. 364).  On January 7, 2008,
Mobley was upset about problems with his son's expectations; his
mood was reported to be dysphoric (Tr. 367).  The next day,
Plaintiff reported doing well (Tr. 368).  On January 15, Mobley
complained of headaches and increased depression and anxiety
while sleeping less because of worry (Tr. 370).

   In his determination, the ALJ gave no weight to the mental

RFC completed by Dr. Jenkins as there was "no accompanying narrative explanation to qualify his remarks and they are apparently based on the claimant's subjective allegations.  In fact, Dr. Jenkins acknowledged that a psychological evaluation was not obtained" (Tr. 13-14).  The ALJ gave great weight to Brantley's evaluation that Mobley was a malingerer (Tr. 13). Ultimately, the ALJ determined that Plaintiff did not have a severe mental impairment and that he was capable of performing his past relevant work as a lace machine operator (Tr. 7-15).

In bringing this action, Mobley first claims that the ALJ improperly determined that he did not have a severe mental impairment.  In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Eleventh Circuit Court of Appeals held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf*. 20 C.F.R. § 404.1521(a) (2008).[6]  The Court of Appeals has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability

---

[6]"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  It is also noted that, under SSR 96-3p, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."

Plaintiff's argument on this claim is based, in large part, on the mental RFC completed by Dr. Jenkins.  Therefore, the Court considers it necessary to review and decide Mobley's second claim before reaching resolution on the first claim.

Plaintiff has claimed that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's physicians.  Specifically, Mobley has referred to the mental RFC completed by Dr. Jenkins and summarized herein earlier (*see* Tr. 235).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[7] *see also* 20 C.F.R. § 404.1527 (2008).

_____

[7]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

As noted earlier, the ALJ rejected Dr. Jenkins's conclusions of extreme limitations because he provided no narrative to go with the check-off form and admitted that he had not conducted a psychological evaluation in completing the assessment.  In addition, the Court would note that the medical records provided by Southwest Alabama Mental Health did not support the extreme limitations suggested by Dr. Jenkins.  In fact, there are no limitations written into the progress notes of SAMH at all.  The Court finds no error in the ALJ's rejection of the extreme limitations found by Mobley's treating doctor.

The Court also notes that Plaintiff has challenged Brantley's qualifications to conduct the consultative mental examination which he performed (Doc. 14, pp. 3-4; *see also* Tr. 209-11).  The report states that Brantley has a Ph.D. and that he is a Licensed Professional Counsel (Tr. 209).  No other information is provided in the record, by the ALJ, or by the Government (*see* Doc. 15).  As such, Mobley is correct that Brantley's report can be considered—not as an "acceptable source," but—as an "other source" to "show the severity of [the] impairment and how it affects [the claimant's] ability to work." 20 C.F.R. § 404.1513(e) (2008).

Having made that determination, the Court again notes that the ALJ gave great weight to Brantley's report which concluded that Plaintiff was a malingerer (Tr. 13).  The ALJ also noted

that Drs. West and Pirofsky had provided reports which indicated that Plaintiff did not give his maximum effort when they were conducting their examinations (Tr. 14; *cf.* Tr. 204, 237). Therefore, although the ALJ erred in giving great weight to Brantley's report, the Court finds that it was, at most, harmless error.

The Court will now return to Mobley's first claim, that the ALJ erred in determining that he did not have a severe mental impairment. The Court has found that the ALJ's decision to reject Dr. Jenkins's conclusions was supported by substantial evidence. Without that, there is no other evidence of record to support Plaintiff's claim that he has a severe mental impairment. This finding is bolstered by the reports of malingering by Brantley, West, and Pirofsky. Though Plaintiff has pointed to records indicating depression, he has not, ultimately, shown the Court that his impairment prevents him from working. The Court finds no merit in this claim.

Mobley has raised two different claims in bringing this action. Both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action

11

be **DISMISSED**.   Judgment will be entered by separate Order.

DONE this 27th day of April, 2009.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE